## ATLANTIC COAST LINE R. CO. et al. v. ATLANTIC BRIDGE CO., Inc.

### No. 6481.

Circuit Court of Appeals, Fifth Circuit.
April 9, 1932.

Robert H. Anderson and John B. L'Engle, both of Jacksonville, Fla., for appellants.

F. C. Hillyer, of Jacksonville, Fla., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee shipped from points in North Carolina to Pompano, Fla., Atlantic Coast Line and Southern Railway to Jacksonville, thence Florida East Coast, two carloads of freight. The first carload contained a crane and hoisting engine, the second a "whirley," an apparatus for handling heavy material, combining a steam engine and a hoist with a projecting arm having a wide radius of swing. There being no prescribed through rate, there was charged on each carload a combination of the rate to Jacksonville, 52 cents and 53½ cents respectively, with a rate of 78 cents from Jacksonville to Pompano. The rate to Jacksonville is not in dispute; the 78-cent rate is. That rate was assessed and collected on the basis of sixth class rate, item 11, p. 147, consolidated freight classification No. 4, Southern classification No. 47, prescribed for cranes or derricks, N. O. I. B. N. At the time these shipments moved, there was in force between Jacksonville and Pompano an exception to the Southern classification, known as exception No. 4, I. C. C. No. 20, which provided for a class "N," a lower classification, on certain articles. This exception No. 4 with Florida basis book, I. C. C. No. A.-569, provided for a rate of 31¾ cents. Claiming that this rate should have been applied, appellee sought and obtained from the Commission a reparation order (159 I. C. C.

287), and from the District Court a judgment enforcing this order. This appeal followed.

The facts out of which the controversy arises are fully set out in the opinion of the District Court, 56 F.(2d) 163; it will suffice here to sharply state the reason for, and the crux of, the controversy.

The reason for it is that, instead of making the scope of the exception certain in itself by setting down specifically in it by name or description each article to which the exception was to apply, the carrier relied upon the expedient, always a doubtful one where precision and certainty are desired, of attempting to fix its content by writing into it by general terms of reference articles described and classified in the Southern classification. The crux of the controversy is whether the language of reference used in the exception, item 16, "Machinery and machines, C. L. rated Sixth Class in Southern Classification, also dredging machinery, and parts thereof, C. L. per car of 20,000 pounds, excess in proportion, Class 'N' " was intended to and does incorporate in the exception, and limit the exception to, those machines taking sixth class rate listed in the Southern classification under the heading "Machinery and Machines," or whether it was intended to incorporate in and to extend the exception to all kinds of machinery and machines rated sixth class in the Southern classification, including those machines and machinery separately classified on page 147, consolidated freight classification No. 4 as cranes or derricks N. O. I. B. N. (not otherwise identified by name).

The Commission and the District Judge took the broader view of the reference. We think they were right. Tariffs, like statutes, have the force of law; like statutes, they must be expressed in clear and plain terms, so that those dealing with and governed by them may understand them and act advisedly. Swift v. U. S. (C. C. A.) 255 F. 291. They may not be contrived in catchpenny terms to catch the ignorant and unwary. If they are ambiguous, or permit of two meanings, the shipper may construe them in the most favorable way to himself which the terms permit. Southern Pac. v. Lothrop (C. C. A.) 15 F.(2d) 486; American Ry. Express Co. v. Price Bros. (C. C. A.) 54 F. (2d) 67; United States v. Gulf. Ref. Co,. 268 U. S. 543, 45 S. Ct. 597, 69 L. Ed. 1082. That the articles in question here consist of machinery, which, though not classified as such under Southern classification, item

656

"Machinery and Machines," were by that classification rated sixth class, and therefore come under the general terms of reference used in the exception, unless they can be specifically limited as the carrier contends, is perfectly clear; in fact, no one denies it. It is equally clear that a carrier may not, under a tariff couched in general terms, which, if interpreted in one way, will produce a higher, in another a lower, rate, insist upon the interpretation which gives it the higher rate. In short, in a situation of that kind, the shipper who has to pay the freight may call the tune.

Besides, we do not think the exception ambiguous, or susceptible of two constructions. We think that, whether by mistake or intention, the carrier has so drawn the language of its exception that a reasonable construction of it will not permit the finding that it includes in its terms only those articles rated sixth class in Southern classification, which are listed under the item "Machinery and Machines." The general intention of the exception was to initiate on certain articles a lower rate than sixth class. The significant and controlling words of reference in the exception giving that intention effect are "rated Sixth Class Southern Classification." Their use compels the conclusion that, whatever the carrier's unexpressed intention may have been, its expressed intention, as manifested in the language used, was to make applicable to all machinery and machines rated sixth class Southern classification the lower class "N" rate provided in the exception. The intention thus manifested in the words of the tariff is alone the intention to which the law gives effect. Beaumont, Sour Lake R. R. v. Magnolia Provision Co. (C. C. A.) 26 F.(2d) 72.

The judgment is affirmed.