Dureee, Judge,
delivered the opinion of the court :*
This is an action for breach of a fixed price research and development contract for the design, manufacture and furnishing of an instrumentation semi-trailer vehicle by plaintiff, a Maryland Corporation for defendant, acting through the National Aeronautics and Space Administration (NASA) at a price, as subsequently amended, of $79,093.47.
Specifications of the contract called for a trailer approximately 39 feet long. Plaintiff alleges that it designed such a trailer but that defendant indicated it required a longer trailer and by constructive change compelled plaintiff to redesign and build a 40-foot trailer at an additional cost of $67,598.58 for the extra foot. The breach alleged is defendant’s refusal to pay the latter sum, presumably as an equitable adjustment under the standard changes clause of the contract, upon acceptance of the trailer, and its refusal to accept the 39-foot design.
Under the standard disputes clause of the contract, plaintiff appealed an adverse decision of the Contracting Officer to the NASA Board of Contract Appeals, which denied the *413 appeal. Plaintiff now alleges that the Board decision was arbitrary, capricious, contrary to the evidence and administrative record, and contrary to law.
Upon motion by defendant to dismiss the petition or for summary judgment, and after plaintiff was permitted to amend its petition, the Commissioner of this court submitted his opinion and conclusion of law pursuant to order of the court under Buie 54(b). He concluded that the petition was subject to dismissal: (1) for failure to state the claim with particularity, and (2) for failure to plead the substance of the portions of the contract relied upon or to attach the contract or portions relied upon to the petition. He further concluded that plaintiff had not proved a reasonable ambiguity in the contract as a necessary predicate for the alleged constructive change in the trailer specifications of the contract from 39 feet to 40 feet, as required by defendant, and that the Board’s interpretation of the specifications,, while not conclusive as a matter of law, was reasonable and correct, and that accordingly, the petition must be dismissed.
Plaintiff thereupon requested review of only that part of the Commissioner’s report to the court which considered and construed as a matter of law the terms and conditions of the contract, because of an alleged impropriety by the Commissioner in attempting to construe the subject contract without having the contract in toto before him.[1]
Plaintiff’s brief alleges a question of law — a breach of contract, which can also be inferred from the last sentence of its amended petition, quoted above. On questions of law, a decision of the head of an agency or a board of contract appeals is not final against a plaintiff nor binding on the court. Kraus v. United States, 177 Ct. Cl. 108, 366 F. 2d 975 (1966); Jack Stone Company. v. United States, 170 Ct. Cl. 281, 344 F. 2d 370 (1965). It is proper, therefore, to see if there is any substance to plaintiff’s allegation that the board was in error in interpreting the contract specifications. Defendant has supplied the court with a copy of the board *414 decision, containing pertinent contract provisions, as an appendix to its reply brief. The board did not discuss breach of contract, as this question was not raised administratively by plaintiff. However, interpretation of specifications involves the meaning of a contract and is a proper subject for judicial determination. Jansen v. United States, 170 Ct. Cl. 346, 353, 344 F. 2d 363, 368 (1965); C. J. Langenfelder & Son v. United States, 169 Ct. Cl. 465, 480, 341 F. 2d 600, 609 (1965).
Plaintiff advanced several claims before the board which have not been pleaded to the court, and attention will be directed only to the change-in-length claim which is asserted here. As to that claim, the specifications, in pertinent part, read:
1.1.1 * * * The van will be built with accommodations for as many standard 19-inch wide electronic equipment racks as possible. Present requirements are for a total of 23 racks. The overall dimensions of the semi-trailer will be the maxwmm that will still allow air transportability via 0-133 type aircraft and highway- transportability. within the legal road limits in all states except Hawaii and Alaska. [Emphasis supplied.]
* * * # *
4.2 External Dimensions
The external dimensions will meet the following criteria:
4.2.1 The semi-trailer will be air-transportable on the C-133 or C-124 type of military aircraft.
4.2.2 The semi-trailer will be within the legal road limits in all states excepting Hawaii and Alaska.
4.2.3 Semi-trailer shall be approximately 39 feet m length. [Emphasis supplied.]
At a meeting on October 23,1963, Government representatives expressed dissatisfaction concerning the electronic rack layout and the insufficiency of available working space as shown in drawings prepared up to that time by the contractor. The latter stated that defendant’s desires and requirements could be met only by extending the length of the trailer to 40 feet. Plaintiff ascertained that a 40-foot trailer would go into a 0-133 type. The trailer, as heretofore stated, *415 was then redesigned and built to be one foot longer than the 39-foot length first designed by plaintiff.
There is no dispute as to whether the 40-foot trailer met the requirements of paragraphs 4.2.1 and 4.2.2 of the specifications. Plaintiff argues, however, that the 39-foot design also met the contract requirements and that the redesign allegedly required by defendant amounted to a constructive change, as it was not formalized by a written change order.
There is no ambiguity in the specifications that should be construed against defendant which drafted them, despite plaintiff’s contention. If paragraph 4.2.3 stood alone, plaintiff would have been justified in assuming that 39 feet would be sufficient. However, the specifications must be read together and, if a 39-foot trailer was not the maximum that would go into a C-133 type aircraft, as required by paragraph 1.1.1, then, plainly, its length should be extended to the maximum that would do so — in this case, 40 feet. There is nothing inconsistent or ambiguous about these paragraphs when they are read together. Plaintiff can prevail only if the words “maximum” in paragraph 1.1.1 or “approximately” in paragraph 4.2.3 are construed to mean something entirely different, or are deleted. If plaintiff thought there was a patent ambiguity, it was its duty to inquire, but it did not do so. Blount Bros. Construction Company v. United States, 171 Ct. Cl. 478, 346 F. 2d 962 (1965); WPC Enterprises, Inc. v. United States, 163 Ct. Cl. 1, 323 F. 2d 874 (1963). The Board’s opinion also pointed out that other specifications placed full responsibility, initially, upon the plaintiff-contractor to ascertain with precision the maximum length for C-133 loadability. Its failure to do so, coupled with its failure to request guidance from the Government concerning any doubts it had as to the relationship between paragraphs of the specifications, which it now says were confusing, led to its unnecessary design effort that was not approved.
Defendant made no change, constructive or otherwise. It simply stood pat on the language of the specifications agreed to by the parties. Where a contract is amenable to only one reasonable construction, in light of all pertinent provisions, it should be enforced according to its tenor as a whole without regard to possible ambiguity in only one *416 provision. Construction Service Company v. United States, 174 Ct. Cl. 756, 357 F. 2d 973 (1966). “Where a contract is amenable to only one reasonable construction upon its face, it would not be appropriate to strain the language of other contractual provisions to create an ambiguity.” Jansen v. United States, supra, at 356, 344 F. 2d at 370. Plaintiff’s interpretation of the specifications is not within what this court has called, in other cases, the “zone of reasonableness.” Any group of words can be twisted by strained construction into ambiguity,[2] but this is not permissible for its does violence to the intention of the parties as expressed in the contract language and specifications. Hotpoint Company v. United States, 127 Ct. Cl. 402, 406, 117 F. Supp. 572, 574 (1954), cert. denied 348 U.S. 820; Duhame et al. v. United States, 127 Ct. Cl. 679, 683, 119 F. Supp. 192, 194-5 (1954). “Also, an interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible.” Hol-Gar Manufacturing Corporation v. United States, 169 Ct. Cl. 384, 395, 351 F. 2d 972, 979 (1965). Nor is a contract rendered ambiguous by the mere fact that the parties disagree as to its meaning when the disagreement is not based on reasonable uncertainty of the meaning of the language used. Carter Oil Company v. McCasland, et al., 190 F. 2d 887, 890-91 (10th Cir. 1951), cert. denied, 342 U.S. 870. The fact that an improvident interpretation placed by a contractor upon the specifications may even be considered conceivable, is not a sufficient basis alone for construction of the contract against the author of the language, if not reasonable when the contract is considered as a whole and in light of the purpose of the contract. Randolph Engineering Company v. United States, 176 Ct. Cl. 872, 367 F. 2d 425 (1966); Southern Construction Company v. United States, 176 Ct. Cl. 1339, 364 F. 2d 439 (1966); Jefferson Constmiction Company v. United States, 151 Ct. Cl. 75, 84 (1960).
*417 By all the standard tests of the rules on ambiguity laid down by the cases, plaintiff has not proved a reasonable ambiguity as a necessary predicate for the alleged constructive change. Accordingly, the Board’s decision interpreting the specifications, while not conclusive as a matter of law, was entirely reasonable and correct, and must be upheld. Defendant’s motion to dismiss the petition or in the alternative for summary judgment is granted and the petition must, therefore, be dismissed.

Tlie court is indebted to Chief Commissioner Marion T. Bennett, whose decision has been of great assistance in the preparation of this opinion.

 After reply by defendant in opposition to plaintiff’s request for review and during oral argument before the court, plaintiff was. granted leave to file a further memorandum, to which defendant replied. Thereupon, plaintiff filed motions for call upon defendant and upon NASA for certain documents; these motions, upon response thereto by defendant, are being dismissed by separate order.

 Aero Mayflower Transit Company v. United States, 162 Ct. Cl. 233, 237 (1963).