## GREAT NORTHERN RAILWAY CO v. DELMAR CO.

No. 563. Argued April 30, May 1, 1931.—Decided May 25, 1931.

---

* The opinion is here printed as amended by an order of Oct. 19, 1931, which will appear in Vol. 284.

*Mr. R. J. Hagman,* with whom *Mr. F. G. Dorety* was on the brief, for petitioner.

*Mr. Fred W. Putnam,* with whom *Messrs. Frank W. Shaw, Orren E. Safford, Wilbur D. Shaw,* and *Sam W. Campbell* were on the brief, for respondent.

*Messrs. Daniel W. Knowlton* and *E. M. Reidy,* by special leave of Court, filed a brief as *amici curiae.*

Mr. Justice Roberts delivered the opinion of the Court.

The Interstate Commerce Commission awarded Delmar Company reparation against the Great Northern Railway Company for certain charges made on shipments of grain.[1] Suit was brought on the award and judgment rendered against the railway by the District Court. On appeal to the Circuit Court of Appeals that judgment was affirmed.[2] This Court granted certiorari.[3]

The pertinent facts are that numerous shipments of grain originated at points on the line of the railway in Minnesota, North Dakota and South Dakota. They were originally billed to Minneapolis. After arrival there they were reconsigned by the Delmar Company, in the same cars, to Superior, Wis., where delivery was made. The entire movement from the points of origin to Supe-

---

[1] 120 I. C. C. 530.　　[2] 43 F. (2d) 780.　　[3] 282 U. S. 836.

rior was over the rails of the Great Northern. The shorter route from the places of shipment to Superior is via Willmar. The longer, which the cars in question traveled,—via Minneapolis,—involves passage through the congested railroad terminals in that city, with incident traffic difficulties and delays not encountered on the more direct one. The difference between the two in mileage from the shipping points to Superior varies by from 12 to 23 per cent. The carrier collected its local rates from origin points to Minneapolis, plus a proportional rate of 6.5 cents beyond. The combinations of rates so exacted were higher than the through rates specified in the tariffs for the transportation of grain from these points to Superior.

The Commission found that it had previously been the custom to apply the through rate only upon shipments via the direct route, and to apply the proportional rate beyond Minneapolis to such as were reconsigned at that point. The advantage to the Delmar Company of originally consigning to that city and reconsigning to Superior is that the former is a grain market, and the grain may be sold en route and delivered at Minneapolis pursuant to such sale, or reconsigned if not sold on its arrival.

It is conceded that the shipper had the right of reconsignment without additional charge for that privilege, and that the situation is the same as if the shipments had originally been billed to Superior via Minneapolis.

The Commission sustained the contention of the Delmar Company that the quoted through rates from points of origin to Superior applied to shipments routed via Minneapolis, since the tariff did not expressly restrict their application to the shorter and more direct route via Willmar. This finding was the basis of the award of reparation.

The railway maintains that in the circumstances here presented the tariff may not be so construed as to render the specified through rate applicable to shipments by way of Minneapolis. This would be contrary to established

custom and would occasion violation of the long-and-short-haul clause of the Interstate Commerce Act.

The Commission has repeatedly decided that where two or more routes are " open," which means that in the judgment of the Commission none of them is unreasonably circuitous, the shipper has the option as to route, at the quoted rate, in the absence of a contrary statement in the tariff. Van Dusen Harrington Co. v. Chicago, M. & St. P. Ry. Co., 47 I. C. C. 59; Meeds L. Co. v. Director General, 59 I. C. C. 243; Freeman Grain Co. v. Director General, 68 I. C. C. 559; Baker-Reid L. Co. v. Baltimore & Ohio R. Co., 74 I. C. C. 489; Steinhardt & Kelly v. Erie R. Co., 96 I. C. C. 229; Scott County Farm Bureau v. Alabama & V. Ry. Co., 101 I. C. C. 357; Browne-Hinton Wholesale Grocery Co. v. Great Northern Ry. Co., 102 I. C. C. 237; Northwestern Fruit Exchange v. Great Northern Ry. Co., 128 I. C. C. 538; Atwood Davis Sand Co. v. Chicago N. W. Ry. Co., 136 I. C. C. 471. Here the difference is, in no instance, more than 23 per cent. It is claimed that the longer route is more burdensome, due to congestion at Minneapolis, but there is no definite evidence and no finding on this point. We cannot say that there was error in the Commission's conclusion that the longer route was not unreasonably circuitous.

It is undisputed that there are destinations on the railway's line between Minneapolis and Superior as to which the rate from the points of origin, consisting of the local rate to Minneapolis plus the proportional rate beyond that city, is greater than the quoted through rate from such points to Superior. Consequently if shipments should be made to Superior via Minneapolis at the through rate, they will be carried for less than would be charged for similar shipments to these intermediate destinations. The railway insists that this would result in violations of § 4 of the Interstate Commerce Act.[4] That section is in part:

---

[4] U. S. C., Tit. 49, § 4 (1).

"It shall be unlawful for any common carrier . . . to charge or receive any greater compensation in the aggregate for the transporation . . . of like kind of property, for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through rate than the aggregate of the intermediate rates subject to the provisions of this chapter, but this shall not be construed as authorizing any common carrier within the terms of this chapter to charge or receive as great compensation for a shorter as for a longer distance: . . ."

The Commission decided that while the facts recited would render the railway liable for the penalties prescribed by the Act, the tariff rate must be applied. The Circuit Court of Appeals, under what we think was a misapprehension of the facts, held no violation of § 4 would result. It said:

"That section applies to ' the same line or route in the same direction, the shorter *being included within* the longer distance.' As to these shipments, the shorter haul is not included within the longer distance."

The quotation indicates a failure to note the fact that the comparison of rates is made between points which are all upon the longer of the two routes, and that the shorter distance on that line is included within the longer distance to Superior. The Commission filed a brief in this Court taking issue with the conclusion of the Court of Appeals on this feature of the case.

The railway can transport the shipments over the shorter and customary route without violating § 4; but if the tariff is construed to require it to take them over the longer route it must violate that section and incur the resulting penalties. In this situation we think the tariff should be construed as applying only to the shorter route, and not as giving the shipper the option between the two

routes at the through rate. This conclusion is in accord with the principle that where two constructions of a written contract are possible, preference will be given to that which does not result in violation of law. Compare *Wilson* v. *Rousseau,* 4 How. 646, 685; *Hobbs* v. *McLean,* 117 U. S. 567, 576; *In re Rose Co.,* 275 Fed. 409; *Northern Pac. Ry Co.* v. *St. Paul & Tacoma Lumber Co.,* 4 F. (2d) 359.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*